## STATEMENT OF CLAIM III. C.

1.   Marc Stout arrived outside of the courthouse to protest, express himself, and show support to protestors who were on trial that morning for previous protest-related activities arising out of the national Breonna Taylor and George Floyd protests.

2.   Marc Stout arrived outside of the courthouse having already had his civil rights recently violated by the Fredericksburg Sheriff's Department and having already witnessed the Fredericksburg Sheriff's Department recently violate others' civil rights.

3.   On May 31, 2020 the Fredericksburg Sheriff's Department and Fredericksburg Police Department tear-gassed, pepper-sprayed, shot with rubber bullets, and beat protestors outside of the courthouse for criticizing the police and overwhelming the police psychologically with strong messaging and a strong presence.

4.   Marc Stout was an individual who was tear-gassed and pepper-sprayed by the Fredericksburg Sheriff's Department and Fredericksburg Police Department outside of the courthouse on the night of May 31, 2020.

5.   The Fredericksburg Sheriff's Department and Fredericksburg Police Department in the following days and weeks began arresting protestors for disorderly conduct, obstruction of justice, and curfew violations for their continued protest-related activities.

6.   On the morning that gave rise to this complaint fifty protestors were on trial inside the courthouse for protest-related charges placed on them by the Fredericksburg Sheriff's Department and Fredericksburg Police Department.

7.   The fifty protestors on trial were and still are endearingly known as "The Fred 50."

8.   Almost all of The Fred 50 were found not-guilty after their trials.

9.   The prosecutor was able to obtain plea bargains from some of The Fred 50.

10.  Marc Stout did not blindly show up to the courthouse on the morning that gave rise to this complaint to randomly engage in free speech and free expression.

11.    There was history and there was purpose.

12.    On the morning that gave rise to this complaint dozens of protestors were present outside of the courthouse on the sidewalk across the street from the courthouse.

13.    Protestors held signs and banners, chanted, and otherwise peacefully demonstrated against the charges brought by police against fellow protestors on trial that morning.

14.    Marc Stout and the protestors present outside of the courthouse with Marc Stout were present outside of the courthouse all morning and all afternoon.

15.    Throughout the day Marc Stout engaged in politically-charged speech directed at the police.

16.    Throughout the day Marc Stout engaged in various methods of non-verbal expression.

17.    The defendant ultimately arrested Marc Stout for disorderly conduct for his speech and expression exhibited throughout the day.

18.    The defendant arrested Marc Stout for the following conduct:

    18.1.    Tone and volume of Marc Stout's voice;

    18.2.    Challenging the police to arrest Marc Stout;

    18.3.    Threatening to blow weed smoke in the direction of an officer's face;

    18.4.    Making eye-contact with deputies while shadow-boxing on the sidewalk;

    18.5.    "Unsafe" climbing;

    18.6.    Jumping around;

    18.7.    Sprinkling water;

    18.8.    Sprinkling water in the direction of an empty police cruiser parallel parked on a public street;

    18.9.    Kicking leaves about the tire of an empty police cruiser parallel parked on a public street

    18.10.    Huddling down in the direction of an empty police cruiser parallel parked on a public street;

18.11.   Pulling on the passenger door handle of an occupied police cruiser parallel parked on a public street while gesturing to enter the vehicle for declined conversation with the officer

19.   Marc Stout's arrest armed the defendant and the defendant's co-worker deputies with information of the fact that Marc Stout had been arrested, information that the defendant and his co-workers could then present to the public in an attempt to undermine Marc Stout's public persona.

20.   The defendant's co-worker deputies, armed with that information, went outside and made defamatory, embarrassing, and humiliating character statements about Marc Stout and Marc Stout's arrest to members of the public who were congregating on the sidewalk outside of the courthouse and who had witnessed Marc Stout's arrest.

21.   The defendant contacted the Free-Lance Star, a local news publication, and informed Keith Epps, a journalist for the publication, that Marc Stout and Jacqueline Stout, who attempted to film Marc Stout's arrest, were arrested for disorderly conduct.

22.   The defendant made defamatory, embarrassing, and humiliating character statements about Marc Stout and Marc Stout's arrest to Keith Epps.

23.   The Free-Lance Star published an article that characterized Marc Stout and Jacqueline Stout as undesirables.

24.   Marc Stout was found not-guilty after a bench trial in Fredericksburg General District Court.

25.   The General District Court judge ruled that not only did Marc Stout's conduct not satisfy the elements of disorderly conduct but that it was clearly established that Marc Stout's speech and expression was protected by the First Amendment.

26.   The defendant arrested Marc Stout because Marc Stout's manner of speech and expression criticized the police and overwhelmed the defendant psychologically.

27.   The defendant arrested Marc Stout without probable cause.

28.   The defendant arrested Marc Stout pursuant to Virginia Code §18.2-415(A)(1).

29.   Virginia Code §18.2-415(A)(1) states in relevant part:

A. A person is guilty of disorderly conduct if, with the intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, he:

1. In any street, highway, or public building, or while in or on a public conveyance, or while in a public place engages in conduct having a direct tendency to cause acts of violence by the person or persons at whom, individually, such conduct is directed;

30. No objectively reasonable police officer could have concluded that probable cause existed that Marc Stout's speech and expression was "conduct having a direct tendency to cause acts of violence by the person or persons at whom, individually, such conduct is directed."

31. No objectively reasonable police officer could have concluded that probable cause existed that Marc Stout's speech and expression had a direct tendency to cause acts of violence.

32. No objectively reasonable police officer could have concluded that probable cause existed that Marc Stout's speech and expression was directed at any individual person or persons.

33. The defendant maliciously prosecuted Marc Stout.

34. Disorderly conduct is a Class 1 misdemeanor, carrying a possible one-year jail sentence.

35. For months until Marc Stout was exonerated the defendant subjected Marc Stout to the daily weight and burden of the crushing and unpredictable nature of the criminal-justice system.

36. For months until Marc Stout was exonerated he dreaded every single day in fear of receiving a one-year jail sentence.

37. For months until Marc Stout was exonerated his quality of life was all but snuffed out by the weight and burden of the lengthy and terrifying court process superimposed on Marc Sout by the defendant.

38. For months until Marc Stout was exonerated he was plagued by the defendant with uncertainty, anxiety, and the fear of the possibility of receiving a one-year jail sentence.

39. Jacqueline Stout filed a civil-rights lawsuit against the deputy who arrested her for disorderly conduct for filming Marc Stout's arrest.

40. Marc Stout can not expound upon that case or the outcome of it.

41. The defendant's co-worker deputies attempted to commit other civil-rights violations against protestors outside of the courthouse after Marc Stout and Jacqueline Stout had been arrested.

42. The defendant's co-workers ultimately became overwhelmed by the protestors' resistance to the defendant's co-workers' attempts to violate the protestors' rights, and retreated back inside the courthouse.